Lawrence, J.
William E. Duffy, the brother of the plaintiff and the defendant, died on the 30th day of August, 1876, intestate, at the town of Portland, in the state of Connecticut, seized and possessed in fee of four lots of land in the city of Eew York, situated on the northerly side of West One Hundred and Thirty-fourth street, between Seventh and Eighth avenues., The plaintiff and defendant, as heirs-at-law of William E. Duffy, were each entitled to a one-seventh part of his said real estate, and on the 16th of May, 1883, an action was commenced for the purpose of obtaining a partition and division of the said lands among the different heirs-at-law of the said intestate. The defendant, James Duffy, seems to have been, up to a certain point, the adviser of his sister, and it appears by the evidence that he procured an answer in said action to be put in in her behalf, said answer having been verified on the 27th of March, 1882. On the 5th of June, 1882, the plaintiff executed and delivered to the defendant a conveyance or assignment of all her right, title and interest in and to the lands above referred to, which assignment or transfer is expressed to have been made for the consideration of sixty dollars. The evidence shows that the property in question was worth about $18,000, and that after deducting the incumbrances thereon, it was worth at least the sum of $15,000. Assuming such to have been the true value of the property, it is apparent that the plaintiff’s share exceeded the sum of $2,000 in value, and this action is brought by the plaintiff to set aside the assignment, who alleges in her complaint that she did not understand the purport and effect of the assignment; that the same was procured by fraudulent representations made to her by the defendant; that the same was a paper necessary for her to execute for said action in partition to progress the said suit, and that the same was executed under the belief that there might be something wrong about the other paper, to wit, the answer put in in the action for partition, as above stated.
The plaintiff further alleges that she was on the 3d day of *342 May, 1883, for the first time informed that the defendant had claimed that she had assigned all her right, title and interest in said lands to him, and she alleged that she never had any knowledge until the month of May, 1883, of that assignment. The answer of the defendant denies all fraud, and the contention of the defendant in substance is that the transaction in question was made in good faith, and that no undue influence was exerted to bring about the execution of the assignment. Although the assignment was executed on the 5tli of June, 1882, it was not recorded in the register’s office until the 22d of August, 1882.
This action was commenced on the 16th of May, 1883, and on the 29th of August, 1883, the plaintiff became insane and was taken to an asylum. On the 22d of June, 1883, the plaintiff’s deposition was taken before a referee, and that deposition certainly sustains the position taken by the plaintiff in her complaint. I have read the evidence submitted on the part of the defendant tending to show that the transaction in question was fair and honest and that no undue influence was brought to bear upon the plaintiff to induce her to execute the assignment now sought to be set aside, but I am compelled to say that the perusal of that evidence has tailed to satisfy me that the transaction is one which equity ought to uphold. It is quite true that it is not enough to induce a court of equity to interfere to show that a bargain is hard and unreasonable, and tha't mere inadequacy of consideration does not alone form a ground for equitable relief, but, as was said by Mr. justice Harris, in the case of Dunn agt. Chambers (4 Barb. Sup. Ct. R., 379): “ There are cases where there is no positive evidence of fraud, in which the inequality of the bargain is so gross that the mind cannot resist the influence that though there be no direct evidence of fraud, such a bargain must have been in some way improperly obtained. In such cases the court of equity will avoid a bargain, not merely on account of its gross inequality, but because that inequality furnishes the most vehement presumption of fraud.”
*343 In my opinion the evidence brings this case within the principle so ably stated by that learned justice. It is conceded that but sixty dollars in cash was paid by the defendant to the plaintiff at the time the assignment was executed. The defendant stated in his testimony that he had befriended the plaintiff for many years, and has given her different sums of money at various times. He also claims that he furnished the money that was requisite to defray the funeral expense of plaintiff’s husband. He is contradicted substantially in this respect by other witnesses, but assuming his statement to be true, as that consideration was paid about thirty years before the execution of the assignment, it cannot now be relied upon to support the assignment. Assuming that the defendant did pay all the sums which he claims to have paid for the plaintiff, the value of the property transferred to him was so much in excess of the aggregate of those sums as to leave the considera-; tion for the assignment still grossly inadequate.
In this case the plaintiff was an ignorant woman, unable to read or to write, who relied, as the evidence shows, very much upon the superior knowledge and ability of her brother, the defendant. Indeed, in her deposition she says : “ I thought so much of my brother that I would sign any paper he presented to me, believing it to be right.” It will also be seen that in the deposition she denies that she ever received a single cent from her brother over and above what he actually owed her. The evidence of Hr. Hehrzbaeh corroborates the defendant in his assertion that he actually paid the sixty dollars to the plaintiff. Even if she is in error in that respect, however, I think the whole case shows that advantage was taken of ignorance by her brother, in whom she had implicit confidence, to obtain an assignment of her interest in her deceased brother’s property, which assignment is founded on a grossly inadequate consideration, and that the assignment cannot be supported upon well established principles of equity. In addition to the case decided by Hr. justice Harris, already referred to, the case of Whelan agt. Whelan (3 Cow., 337), *344 which in many respects is analogous to the case now under consideration, may be profitably consulted (See, also, Willard’s Eq. Jur. [edition of 1879], pp. 203-206, and cases cited).
There must be judgment for the plaintiff, declaring the assignment of June 5, 1883, null and void.